UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SUSAN K., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 22-cv-12549 <br><br> Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 17, 21)**

I.   **Introduction**

Plaintiff Susan K. appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied her application for widow's disability insurance benefits (WDIB) and supplemental security income (SSI) under the Social Security Act. Both parties have filed summary judgment motions and consented to the undersigned conducting all proceedings under 28 U.S.C. § 636(c). ECF No. 16; ECF No. 17; ECF No. 21. After review of the record, the Court **ORDERS** that:

- Plaintiff's motion (ECF No. 17) is **DENIED**;

- the Commissioner's motion (ECF No. 21) is **GRANTED**; and

- the ALJ's decision is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

**II.    Background**

**A.  Plaintiff's Background and Disability Application**

Born in November 1967, plaintiff was 51 years old when she applied for WDIB and SSI in August and September 2019, with an alleged disability onset date of April 1, 2018.  ECF No. 13-2, PageID.130, 144.[1]  She had past relevant work as a physical inventory clerk.  *Id.*, PageID.144.  Plaintiff claimed disability from depression, anxiety, post-traumatic stress disorder, panic disorder, and degenerative disc disease.  ECF No. 13-3, PageID.194.

After a hearing, during which plaintiff and a vocational expert (VE) testified, the ALJ found plaintiff not disabled.  ECF No. 13-2, PageID.145.  The Appeals Council denied review, making the ALJ's decision the final

---

[1] The Social Security Act provides benefits to widows or widowers of wage-earning spouses if they are at least 60 years old or are at least 50 and have a disability.  20 C.F.R. § 404.335(c).  The disability analysis for WDIB claims is the same as that applied in standard disability insurance benefits claims.  *See id.* (applying definition of "disability" set forth in § 404.1505).  To be eligible for WDIB, a widow must show that she became disabled before: (1) seven years after her spouse died, or (2) seven years after she was last entitled to WDIB.  *Id.* § 404.335(c)(1).  Since plaintiff's husband died in April 2013, she had to prove that she became disabled by April 2020.  *See* ECF No. 21, PageID.916.

2

decision of the Commissioner. *Id.*, PageID.116. Plaintiff timely filed for judicial review. ECF No. 1; ECF No. 11.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c).

3

(RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that plaintiff was not disabled. At the first step, he found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 1, 2018. ECF No. 13-2, PageID.132. At the second step, he found that plaintiff had the severe impairments of obesity, lumbar degenerative disc disease, and depression/anxiety. *Id.* Next, the ALJ concluded that none of plaintiff's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.*, PageID.134-136.

Between the third and fourth steps, the ALJ found that plaintiff had the RFC to perform a reduced range of light work,[3] except that she:

---

[3] Light work involves occasionally lifting or carrying 20 pounds at a time, frequently lifting or carrying ten pounds at a time, and standing or walking for six hours out of an eight-hour workday. 20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Regulation (SSR) 83-10.

4

can only frequently climb ladders, ropes, or scaffolds; in simple, routine, repetitive work; with only occasional supervision; and only frequent public or coworker interaction.

*Id.*, PageID.136. At step four, the ALJ found that plaintiff could not perform her past relevant work. *Id.*, PageID.144. At the final step, after considering plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ concluded that she could perform jobs that existed in significant numbers in the national economy, including office helper, stock checker, and mail clerk. *Id.*, PageID.144-145. The ALJ thus concluded that plaintiff was not disabled. *Id.*, PageID.145.

### III. Analysis

#### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence[4] and conformed with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more

---

[4] Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up). The substantial-evidence standard does not permit the Court to independently weigh the evidence. *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *see also Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

Plaintiff argues that the ALJ erred by (1) disregarding medical evidence about her mental impairments, (2) discounting her panic attacks because she required emergency care only once, (3) failing to support the RFC restriction to frequent interaction with the public and coworkers, (4) failing to discuss how her degenerative disc disease impacted her ability to work, (5) minimizing that condition because of her treatment choices, and (5) disregarding nonmedical source statements about her conditions.

ECF No. 17; ECF No. 22. The Court disagrees and affirms the ALJ's decision.

**B.**

Plaintiff challenges the ALJ's analysis on the various grounds listed above. The Court addresses the arguments about plaintiff's mental impairments, degenerative disc disease, and the nonmedical sources in turn.

**1.**

Plaintiff first contends that the ALJ disregarded records from mental health providers Janet Green, MSW; Leah Mayotte, LPC; Oregon Medical Group; and Oasis Mental Health. ECF No. 17, PageID.902; ECF No. 22, PageID.931-932. Those records describe plaintiff's symptoms of generalized anxiety disorder, obsessive-compulsive disorder, panic disorder, and major depressive disorder, which involved symptoms of daily panic attacks, severe anxiety, low mood, grief over the loss of her mother and husband, and difficulty leaving the house. ECF No. 13-7, PageID.625-627, 701, 711-713, 827-828.

The ALJ accurately discussed each of those records in the hearing decision. ECF No. 13-2, PageID.138-140. Yet he concluded that plaintiff's mental impairments were not disabling since her treatment remained

7

conservative and her mental status examination findings were "fairly unremarkable." *Id.*, PageID.141. Substantial evidence supports the ALJ's rationale. *See, e.g.*, ECF No. 13-7, PageID.626-627, 644, 696, 714, 762, 859 (recommending counseling and medication); *see also id.*, PageID.704 (frequent tears but appropriate affect, cooperative, good social interaction, and fluent speech), *Id.*, PageID.712 (mildly dysphoric mood and affect but normal speech, thought process, memory, and insight; intact attention, concentration, and judgment; and cooperative attitude), *Id.*, PageID.828 (plaintiff was emotional but oriented, talkative, and engaged in the session, and had an appropriate affect); ECF No. 13-8, PageID.857 (anxious mood, thoughts of guilt, and passive suicidal ideation, but normal affect, cooperative, good eye contact, appropriate behavior, and normal attention span and concentration). The ALJ also correctly noted that plaintiff was often noncompliant with her medications.[5] ECF No. 13-2, PageID.141 (citing ECF No. 13-7, PageID.641, 714, 719; ECF No. 13-8, PageID.854, 867).

---

[5] Plaintiff does not challenge the ALJ's finding that her noncompliance reflected a non-disabling condition rather than a symptom of her mental impairments. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009).

Plaintiff's reliance on the cited medical records is unavailing because she has not shown that the ALJ's rationale was unsupported; instead, she asks the Court to impermissibly reweigh the evidence. But as noted above, if substantial evidence supports the ALJ's decision, "it must be affirmed even if the reviewing court would decide the matter differently." *Cutlip*, 25 F.3d at 286 (cleaned up).

Plaintiff also argues that the cited exhibits "would require another look at the DDS doctors' decisions." ECF No. 17, PageID.902. This argument is unclear, and plaintiff offers no further explanation. The Court declines to address this undeveloped argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (cleaned up)).

Plaintiff next faults the ALJ's finding that "[w]hile claimant reported experiencing daily panic attacks, the only documented panic attack in the record was during her emergency room visit in December 2018." ECF No. 13-2, PageID.141, 143. Plaintiff argues that she did not need to seek emergency care for every panic attack since she was familiar with the symptoms. ECF No. 17, PageID.904. She cites an article stating that

emergency care is unnecessary if the panic attack involves ordinary symptoms like anxiety or hyperventilation. *Id.*[6]

But plaintiff's argument aligns with the ALJ's observation that she received only conservative care for her mental impairments. *See* ECF No. 13-2, PageID.141. And the ALJ reasonably noted the inconsistency between plaintiff's allegations and the record evidence. *See* SSR 16-3p (ALJs are to assess whether the plaintiff's claimed symptoms are "consistent with the objective medical and other evidence in the individual's record"). Although the panic attacks allegedly occurred every day, plaintiff's mental status examination findings were unremarkable. ECF No. 13-2, PageID.141. And while some treatment records state that plaintiff had daily panic attacks, those notations are based on plaintiff's self-report; no medical providers witnessed panic attacks except in December 2018. *See* ECF No. 13-7, PageID.625, 692, 701, 711. Thus, there is no error in the ALJ's rationale. *See Nathaniel F. v. Comm'r of Soc. Sec.*, No. 2:20-cv-5364, 2022 WL 420083, at *7 (S.D. Ohio Feb. 11, 2022) (ALJ reasonably observed that "despite [the plaintiff's] claims of daily panic attacks, no medical provider had ever witnessed these attacks and he had not sought

---

[6] University of Utah Health, ER Nor Not: Panic Attacks, https://perma.cc/9L3R-QRQ3 (last visited October 23, 2023).

frequent emergency treatment for his mental health symptoms"); *Perdue v. Colvin*, No. 15-14006, 2017 WL 362668, at *4 (E.D. Mich. Jan. 9, 2017), *adopted*, 2017 WL 976790 (E.D. Mich. Mar. 14, 2017) (ALJ reasonably found that the plaintiff's allegations of panic attacks conflicted with the record because she did not have "continuous treatment for them, because there were no documented episodes of her panic attacks in the record and no related emergency room visits or psychiatric hospitalizations").

Plaintiff also summarily contends that the RFC limitation to frequent interaction with the public and co-workers is unsupported. ECF No. 17, PageID.905. But as plaintiff concedes, the state-agency reviewing physicians found that she could frequently interact with the public and coworkers. ECF No. 13-3, PageID.204, 237. Other medical providers noted that plaintiff was cooperative, talkative, engaged, and had "very good social interaction." ECF No. 13-7, PageID.704, 712, 828-829, 832, 834; ECF No. 13-8, PageID.857. Plaintiff also reported that she sees her daughter and grandson daily, sometimes babysits her grandson, had a friend visit her for two months, and texts another friend daily. ECF No. 13-7, PageID.705-706. Thus, the ALJ's finding was supported.

**2.**

The Court turns to plaintiff's arguments about her degenerative disc disease. She first contends that the ALJ failed to discuss how that condition impacts her ability to work. ECF No. 17, PageID.903. That argument lacks merit.

The ALJ summarized plaintiff's treatment history for her back impairment, including a 2013 lumbar MRI, lumbar epidural blocks in 2016, and a gap in treatment from January 2018 to May 2021, when she started receiving chiropractic care. ECF No. 13-2, PageID.137. The ALJ also discussed plaintiff's complaints of low back pain in June 2021, an x-ray showing severe degenerative disc disease at L5-S1, and her continued chiropractic care. *Id.* The ALJ concluded that plaintiff's condition was not disabling given the minimal and conservative treatment, unremarkable examination findings, and plaintiff's daily activities. *Id.*, PageID.140-141. The RFC is limited to light work with only frequent climbing of ladders, ropes, and scaffolds. *Id.*, PageID.136.

Again, substantial evidence supports this analysis. *See, e.g.*, ECF No. 13-7, PageID.531-532 (noting steady gait, negative straight leg raise, good forward flexion of spine, increased pain with extension, and recommending conservative treatment with steroid injections), 696-697

(finding full range of motion of the neck and back, intact strength, and normal gait, and recommending no medication since marijuana edibles provided relief), 766-770 (chiropractic record noting postural deficits and decreased range of motion in the spine but expecting partial recovery), 819 (noting tenderness and decreased range of motion in the lumbar spine but negative straight leg raise and recommending physical therapy and gabapentin); *see also id.*, PageID.661, 667 (hiking three miles and cleaning a rental house three to four times per week), 726 (scrubbing graffiti off an overpass in 2020), 818 (raising chickens).

Plaintiff argues that the ALJ minimized her complaints of back pain because she chose to discontinue spinal injections and instead pursued chiropractic treatment and used marijuana for pain reduction. ECF No. 17, PageID.904-905. Plaintiff maintains that chiropractic care is "perfectly good treatment," while marijuana is legal in her home states of Michigan and Oregon. *Id.* And she contends that the ALJ failed to recognize that she stopped receiving spinal injections because she had an adverse reaction to the treatment. *Id.*

Contrary to plaintiff's argument, the ALJ did not imply that plaintiff's treatment methods were unacceptable. Rather, he stated that plaintiff treated her condition conservatively with medication, chiropractic care, and

13

marijuana since discontinuing spinal injections.  ECF No. 13-2, PageID.141.  Nor did the ALJ fault plaintiff for stopping the injections.  *Id.*  In fact, the ALJ acknowledged that plaintiff stopped receiving injections "because the last injection left her 'paralyzed' for two hours."  *Id.*, PageID.136-137.  The ALJ did not err by considering the conservative nature of plaintiff's treatment, which is "a relevant factor when assessing a claimant's allegation of severe pain."  *Sulaka v. Comm'r of Soc. Sec.*, No. 16-13800, 2017 WL 8682368, at *5 (E.D. Mich. Sept. 29, 2017), *adopted* 2018 WL 797591 (E.D. Mich. Feb. 9, 2018) (citing *McKenzie v. Comm'r Soc. Sec.*, No. 99-3400, 2000 WL 687680, at *4 (6th Cir. 2000)).

Plaintiff next argues that the ALJ failed to discuss the July 2021 certification from primary care provider Michele Mentink, CNP, for a six-month handicap placard.  ECF No. 17, PageID.905 (citing ECF No. 13-8, PageID.888).  As plaintiff recognizes, an ALJ need not directly address every piece of evidence in the record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).  The ALJ considered Mentink's assessment, as he discussed her treatment notes from June 2021.  ECF No. 13-2, PageID.137 (citing ECF No. 13-7, PageID.818-821).  Her handicap certification would not change the analysis, as "a disability placard adds nothing to a finding of disability because there is no evidence

14

that the two have substantially similar requirements for finding a person to be disabled." *Bass*, 499 F.3d at 511.

### 3.

Finally, plaintiff contends that the ALJ improperly rejected nonmedical source statements from her friend Dustin Ronders and daughters Melissa Koch, Elizabeth Clement, and Katherine Parish.  ECF No. 17, PageID.903-904; ECF No. 22, PageID.929-930, 932-933.

The statements provide similar descriptions of plaintiff's symptoms. They stated that plaintiff often stays in bed, lacks interest or the energy to care for herself or make appointments, and avoids leaving the house.  ECF No. 13-6, PageID.486-487, 508-509.  She requires reminders to shower, take medications, pay bills, and attend appointments, and she relies on her daughter to oversee her accounts.  *Id.*, PageID.432-439, 486-487, 508. Plaintiff also experiences severe panic attacks such that her daughter usually accompanies her when she leaves the house.  *Id.*, PageID.432, 436, 486-487.  The sources also stated that plaintiff's back condition causes pain with standing and prolonged sitting and that she often needs help putting on her shoes and socks.  *Id.*, PageID.433, 486-487, 508-509. Her daughter assists her with household chores, yard maintenance, and caring for her pets.  *Id.*, PageID.433-434.

An ALJ must consider statements from nonmedical sources, including family and friends, about the claimant's symptoms. *Paulovich v. Comm'r of Soc. Sec.*, No. 5:19-cv-12760, 2021 WL 850996, at *7 (E.D. Mich. Feb. 8, 2021), *adopted*, 2021 WL 843173 (E.D. Mich. Mar. 5, 2021) (citing 20 C.F.R. § 404.1529(c)(3); SSR 16-3p).  "If lay witness testimony is provided, the ALJ cannot disregard it without comment, and must give reasons for not crediting the testimony that are germane to each witness." *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012); *see also* 20 C.F.R. § 404.1527(f)(2).  Still, an ALJ's insufficient consideration of lay witness testimony is harmless error unless the testimony would affect the disability decision and is fully supported by the reports of treating physicians. *Id.*; *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004).

The ALJ considered the third-party statements, finding that "[w]hile these statements provide some insight into claimant's functioning and are generally consistent with claimant's own allegations, I am more persuaded by the objective medical opinions in the record, which are more fully supported by the record evidence." ECF No. 13-2, PageID.143.  As discussed above, the ALJ accurately described the medical records, and substantial evidence supports his conclusion that plaintiff's mental and physical impairments were not disabling.  Since a lay witness's statements

16

are "entitled to perceptible weight only if [they are] fully supported by the reports of the treating physicians," the ALJ provided adequate reasons for discounting these statements. See *Paulovich*, 2021 WL 850996, at *7 (cleaned up); *Luteyn v. Comm'r of Soc. Sec.*, 528 F. Supp. 2d 739, 746 n.9 (E.D. Mich. Nov. 1, 2007) (an ALJ "would not have been obligated to credit [lay witness] testimony in the absence of corroborating objective medical evidence").

## IV. Conclusion

The Court **DENIES** plaintiff's motion for summary judgment (ECF No. 17), **GRANTS** the Commissioner's motion for summary judgment (ECF No. 21), and **AFFIRMS** the ALJ's decision under sentence four of 42 U.S.C. § 405(g).

Dated: November 9, 2023

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 9, 2023.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager